1  William I. Edlund, State Bar No. 25013
   Robert H. Bunzel, State Bar No. 99395
2  Howard I. Miller, State Bar No. 251878
   BARTKO, ZANKEL, TARRANT & MILLER
3  A Professional Corporation
   900 Front Street, Suite 300
4  San Francisco, California 94111
   Telephone: (415) 956-1900
5  Facsimile: (415) 956-1152

6  Attorneys for Plaintiffs KEVIN MARTIN,
   DAVID NORRIS and FRANK STONE
7
   James F. Clapp, State Bar No. 145814
8  Marita Murphy Lauinger, State Bar No. 199242
   Zach P. Dostart, State Bar No. 255071
9  DOSTART CLAPP & COVENEY, LLP
   4370 La Jolla Village Drive, Suite 970
10 San Diego, California 92122-1253
   Telephone: (858) 623-4200
11 Facsimile: (858) 623-4299

12 Attorneys for Plaintiff JOHN KERR

                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                          OAKLAND DIVISION
15

16 | KEVIN MARTIN, DAVID NORRIS, FRANK      )   Case No. 10-CV-04020 CW
   | STONE, individually and on behalf of all other )
17 | similarly situated,                      )
                                              )
18 |          Plaintiffs,                     )
                                              )
19 |     v.                                   )   **CONSOLIDATED FIRST AMENDED**
                                              )   **COMPLAINT**
20 | MERRILL LYNCH, PIERCE, FENNER &          )
   | SMITH, INCORPORATED, MERRILL LYNCH       )
21 | & CO., INC., and DOES 1-20, inclusive,   )
                                              )
22 |          Defendants.                     )
   |_____)
23 | JOHN KERR, individually and on behalf of all )   Case No. 11-CV-01654 CW
   | other similarly situated,                )
24 |                                          )
   |          Plaintiff,                      )
25 |                                          )
   |     v.                                   )   Judge:  Hon. Claudia Wilken
26 |                                          )   Courtroom: 2
   | MERRILL LYNCH & CO., INC., MERRILL       )
27 | LYNCH, PIERCE, FENNER & SMITH,           )
   | INCORPORATED, and DOES 1-20, inclusive,  )   *Martin* Complaint Filed: August 6, 2010
                                              )   *Kerr* Complaint Filed: January 18, 2011
   |          Defendants.                     )

-1-

Plaintiffs KEVIN MARTIN, DAVID NORRIS, FRANK STONE, and JOHN KERR on behalf of themselves and all other similarly situated, file this First Amended Consolidated Complaint against defendants MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, and Doe defendants and allege as follows:

## INTRODUCTION AND PARTIES

1.     Defendant Merrill Lynch & Co., Inc. is a financial services holding company, incorporated in Delaware whose wholly owned subsidiary is defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated, a Delaware corporation, which is a full service securities firm engaged in providing financial services and selling financial products (collectively hereafter as "Merrill" or "Merrill Lynch"). Merrill Lynch employs over 1500 persons as Financial Advisors ("FAs") in the state of California and over 16000 such persons in the United States. Merrill Lynch is the largest financial services company in the United States. Merrill Lynch has over 50 offices at various locations in California, including offices in San Francisco, California.

2.     Merrill Lynch operates its California offices by and with Managers and Directors of each California office..

3.     Plaintiffs are unaware of the true names and capacities of all of the defendants sued as Does One through Twenty and will amend this Complaint when that information becomes known. Plaintiffs are informed and believe and upon that basis allege that at all relevant times each of the defendants, including the Doe defendants, were employees, agents or representatives of Merrill Lynch engaging in the acts and conduct alleged in this Complaint, and were acting in the course and scope of, and in furtherance of, such relationship. Plaintiffs will refer to all defendants collectively as "defendant" unless otherwise specifically alleged.

4.     The Doe Defendant Managers/Directors are all citizens of the State of California.

5.     Plaintiff Kevin Martin joined Merrill Lynch on August 20, 1987 and was employed as an FA in the Los Angeles office of Merrill Lynch until February 28, 2009 when he left

1   Merrill Lynch at age 46.  He became employed shortly after he left Merrill Lynch by another

2   financial services company.

3        6.      Plaintiff David Norris joined Merrill Lynch on April 13, 1987 and was

4   employed as an FA in the San Francisco office of Merrill Lynch until February 6, 2009 when he

5   left Merrill Lynch at age 59.  He became employed shortly after he left Merrill Lynch by another

6   financial services company.

7        7.      Plaintiff Frank Stone joined Merrill Lynch on September 21, 1987 and was

8   employed as an FA in the San Francisco office of Merrill Lynch until February 20, 2009 when he

9   left Merrill Lynch at age 53.  He became employed shortly after he left Merrill Lynch by another

10  financial services company.

11       8.      Plaintiff John Kerr joined Merrill Lynch in May 1983 and was employed as

12  an FA in the San Diego office of Merrill Lynch until January 2009, when he left Merrill Lynch at

13  age 56.  He became employed shortly after he left Merrill Lynch by another financial services

14  company.

15                        **GENERAL ALLEGATIONS**

16       9.      Merrill Lynch created three deferred compensation plans which were an

17  integral part of the compensation package paid to plaintiffs, including all California FAs, for their

18  work at Merrill Lynch.   The three Merrill Lynch plans were the following:   Merrill Lynch

19  Financial Advisor Capital Accumulations Award Plan ("FACAAP"); the Merrill Lynch Growth

20  Award Plan for FAs ("Growth Award"); and the WealthBuilder Account Plan ("WealthBuilder")

21  (collectively referred to as the "Plans") for a select group of eligible employees.  Copies of each of

22  the current Plans are attached as Exhibits A, B and C.  The compensation awarded to FAs,

23  including plaintiffs, under the Plans was a substantial amount of the total compensation earned by

24  each FA, including plaintiffs, and was provided to them as incentives to induce them to work

25  harder for Merrill's and their own benefit.

26       10.     Under the Plans, each FA, including plaintiffs, earned compensation awards

27  each year under each of the Plans as part of the compensation package paid by Merrill to FAs.  The

28                                    -3-

1    awards in the Plans, including accrued appreciation, are credited each year to each FA in that FA's

2    stated book account ("Account Balance").  The Account Balance for each FA states the cumulative

3    value of all of the awards earned by that FA up to the date of each year and was reported frequently

4    and at least annually to each FA.  The awards are made in cash and in stock in each of the Plans as

5    more specifically alleged.  Each of the Plans included provisions purporting to forfeit the Account

6    Balance of any FA who was qualified to begin receiving payments from his or her Account

7    Balance, if he or she left Merrill Lynch and became employed by or affiliated in any way

8    anywhere in the world, with a competitor of Merrill Lynch or an affiliate of Merrill Lynch and also

9    to forfeit all of the earned Account Balances if the FA left Merrill Lynch before the FA became

10   eligible under the Rule of 65 or upon retirement or early retirement.

11          11.     The goal of the Plans and part of Merrill Lynch's overall scheme was to

12   restrain and prevent FAs from joining any competitor of Merrill Lynch anywhere in the world by

13   threatening, intimidating and economically coercing them with punishment, if they did so, and by

14   in fact punishing them if and when they did so through forfeitures of compensation they had

15   earned and thereby confiscating millions of dollars of compensation which had been earned by

16   those FAs that left.  Merrill Lynch's Plans wrongfully and unlawfully restrain FAs that are eligible

17   under the Rule of 65 or for early or other retirement by providing that they must leave the financial

18   services industry and not go to work for a competitor in order to receive the compensation which

19   they have earned.  Merrill Lynch's Plans achieve the same result by incorporating unconscionable

20   provisions for FAs that have not worked for Merrill Lynch long enough or are not old enough to

21   qualify under the Rule of 65 or for retirement or early retirement and forfeit all of the earned

22   Account Balances if they leave Merrill.

23                          **CLASS ACTION ALLEGATIONS**

24          12.     Plaintiffs bring this action on their own behalf, and on behalf of a class of all

25   present and former Merrill FAs similarly situated.  The class that plaintiffs represent is composed

26   of all those FAs employed by Merrill Lynch in California and who qualified under the Rule of 65

27   or for retirement or early retirement and were entitled to receive their Account Balances under the

28                                        -4-

1  Plans but whose Account Balances in the Plans were unlawfully and wrongfully forfeited by

2  Merrill Lynch during the 14 year period preceding the filing of this action, and all FAs presently

3  employed by Merrill Lynch in California whose Account Balances in those Plans are still

4  threatened with forfeiture.

5           13.    Plaintiff brings this lawsuit as a class action under Code of Civil Procedure

6  § 382 and Fed. R. Civ. P. 23(b)(2) and (b)(3).

7           14.    <u>Ascertainable Class</u>:  The class is ascertainable in that all FAs who worked

8  for Merrill Lynch in California may be identified and located using information contained in

9  Merrill Lynch personnel and payroll records.

10          15.    <u>Common questions of fact or law</u>:  There is a well defined community of

11  interest in the questions of law and fact common to members of the class which predominate over

12  any individual questions.  Defendants have acted in a manner applicable to the members of the

13  class.  Among the questions of law and fact common to the class are:

14                 a.     Whether Merrill's requirement in the Plans that an FA is disqualified

15  from receiving any compensation from the Plans if the FA works for a competitor upon leaving

16  employment with Merrill Lynch or does not leave the financial services industry violates

17  California Bus. & Prof. Code § 16600.

18                 b.     Whether Merrill Lynch has enforced against California FAs the

19  restraint on competition in the Plans in violation of California Bus. & Prof. Code § 16600.

20                 c.     Whether Merrill Lynch has violated California Bus. & Prof. Code

21  § 16600 by forfeiting the Account Balances of California FAs in the Plans.

22                 d.     Whether Merrill Lynch has threatened, intimidated and coerced in

23  violation of California Civil Code § 52.1 California FAs by knowingly including in the Plans an

24  anti-compete restraint that is void under California Bus. & Prof. Code § 16600 and enforcing that

25  restraint by forfeiting compensation in the Plans.

26

27

28
                                          -5-

e.    Whether each of the Plans is illegal because Merrill Lynch has knowingly based the Plans on an anti-compete restraint void and illegal under California Bus. & Prof. Code § 16600.

f.    Whether defendants have interfered with California FAs' prospective economic advantage by threatening to forfeit or forfeiting earned compensation under the Plans when FAs have exercised their right to work elsewhere in the financial services industries or for a competitor of Merrill Lynch.

g.    Whether Merrill Lynch has incorporated illegal forfeiture provisions in the Plans which are unconscionable and enforced those unconscionable Plan provisions against California FAs who leave Merrill Lynch.

h.    Whether Merrill Lynch forfeitures of earned compensation of California FAs under the Plans violates California Labor Code § 202 by willfully failing to pay California FAs all of their compensation at the time the FA left employment with Merrill Lynch.

16.    <u>Typicality and adequacy</u>: The claims of the plaintiffs are typical of those of the class and the plaintiffs will fairly and adequately represent the interests of the class.

17.    <u>Numerosity</u>: There is a well defined community of interest in the questions of law and fact involved affecting the plaintiff class in that the members of the Class are so numerous that joinder of all of them is impractical. Class members may be easily notified of the pendency of this class action by mail, website or other reasonable means. Plaintiff alleges on information and belief that the class for Rule 23(b)(3) relief consists of more than 80 members, and that for Rule 23(b)(2) relief consists of as many as 1500 members.

18.    <u>Superiority</u>: Plaintiffs know of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action. Relief concerning the plaintiffs' rights under the laws alleged and with respect to the class is appropriate.

19.    <u>Injunctive Relief</u>: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class would enable defendants to continue their wrongful, willful and defiant violations (a) of the

-6-

1   fundamental public policy of the State of California embodied in Business & Professions Code

2   § 16600 which prohibits forfeitures and other restraints on an employee's exercise of the right to

3   engage in the profession or business of his choice, (b) of Civil Code § 52.1 which prohibits

4   interference or attempted interference with such statutory rights by threats, intimidation, or

5   coercion, (c) of Labor Code §§ 201, 202, 204, 221 and 222, and (d) of Civil Code §§ 1709 and

6   3243, and other California laws including Business and Professions Code § 17200 et. seq.

7         20.   Individual Complaints Not Possible:   The likelihood of individual class

8   members prosecuting separate claims has been shown to be and is remote by reasons of their

9   ignorance of their rights, defendants' fraudulent misrepresentations to them, and concealments

10  from them of their rights and defendants' threats, intimidations, coercion and other related conduct.

11        21.   Plaintiffs will Protect Class:  Plaintiffs will fully and adequately protect the

12  interests of the class members, have retained class counsel who are experienced and competent in

13  class actions and in complex litigation, and do not have interests which are contrary to or in

14  conflict with those of the class, all of whom have suffered or are suffering or will suffer the same

15  legal wrongs as a result of the defendants' same misconduct.

16                          **THE REPRESENTATIVE PLAINTIFFS**

17        22.   Each of the four plaintiffs is a citizen of the State of California and was a

18  Financial Adviser formerly employed by Merrill Lynch. Each had earned substantial compensation

19  under the Plans and qualified for payment under one or more of the Plans.  Each had an Account

20  Balance of several thousands of dollars and their Account Balance was forfeited in violation of

21  Business and Profession Code § 16600.

22        23.   On information and belief, there over 80 other FAs in California who have

23  left Merrill Lynch and have not been paid their Account Balances in the Plans and whose Account

24  Balances have been unlawfully forfeited by Merrill Lynch. Merrill has employed over 1500

25  Financial Advisers in California at all pertinent times.

26

27

28

-7-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

**JURISDICTION AND VENUE**

24.     Jurisdiction has been determined to be proper in this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 and 1711-15. Venue is proper because Merrill Lynch has offices and does business in this judicial district.

**MERRILL'S WEALTHBUILDER, GROWTH AND FACAAP PLANS**

25.     California Financial Advisers employed by Merrill Lynch advise individual, partnership and corporate clients in the management of their investments and earn productions commissions as a result of their work with such clients.  The production commissions earned by FAs are the wages earned by the FA.  Wages are paid in parts:

a.      one part of those wages is paid in cash to the FA generating commissions on a current basis;

b.      the other part of those wages is deferred compensation, which Merrill Lynch calls "long term compensation," is withheld and paid under Merrill Lynch's WealthBuilder, Growth and FACAAP Plans.  They provide for "Annual Long Term Incentive Compensation Awards" in cash for WealthBuilder and Growth Plans and in stock, with a minimum cash value for awards for 2001 and prior years.  Records of the compensation are kept by Merrill Lynch and made available to FAs for review and verification.  Compensation awards are made immediately following the year in which the work has been done.  Merrill Lynch maintains an Account Balance, brought up to date at least at the end of each year, of the value of the awards compensation for each California FA.  FACAAP awards prior to January 2003 are computed in cash and Merrill stock.  If the fair market value of the stock is equal to or greater than a minimum value, the FA receives shares of stock; if the fair market is less, the FA receives cash.  Awards subsequent to January 2003 are converted to stock and, when the award is payable, it is paid in shares of stock.

26.     Payment Provisions:

-8-

1          a.    <u>Account Balance</u>:   Upon the death or disability of a Financial

2   Adviser, the Account Balance is paid immediately to the estate, or the designated beneficiary or

3   anyone Merrill determines to be an authorized representative.

4          b.    <u>The Plans</u>:   The WealthBuilder, FACAAP and Growth Plans provide

5   that the payments will not be made or will cease to be made and will be forfeited to Merrill if the

6   Financial Adviser competes with or joins a competitor who competes with Merrill or its Affiliates

7   anywhere in the world within the payout period, and recaptured by Merrill if such competition or

8   joinder occurs during the period of payment after retirement.

9          c.    <u>WealthBuilder Plan</u>:   The WealthBuilder Plan delays payment of

10  Financial Adviser long term compensation wages, which are invested in a mutual fund, until the

11  Adviser reaches the age of 65 or age 55 after at least 10 years of service or after 20 years of

12  service.  Payment is not made until the Financial Adviser reached the age of 55 and there is a

13  reduction of 1% in the value of the Account Balance for each year prior to age 55.   When

14  payments begin, they are made in two equal annual installments beginning in January of the year

15  the Financial Adviser becomes eligible for retirement.   WealthBuilder awards are payable only

16  upon the FA's death, disability, or "Qualifying Termination."   *See* Exhibit C, § 8.1, p. 8.

17  "Qualifying Termination" means termination of employment (i) on or after the individual's 65th

18  birthday; or (ii) on or after the individual's 55th birthday with at least 10 years of service; or (iii) at

19  any age after 20 years of service. *See* Exhibit C, p. 4. In the event of a Qualifying Termination, the

20  FA's WealthBuilder awards are payable in two annual installments, the first at the end of the

21  calendar year in which the Qualifying Termination occurs, and the second at the end of the next

22  year. *See* Exhibit 3, § 8.1, p. 8. (The Administrator of the WealthBuilder has the discretion to pay

23  out awards in more than two installments, provided that the practice is uniform and

24  nondiscriminatory.  Nevertheless, plaintiffs allege on information and belief that the

25  Administrator's consistent practice has been to pay out the WAP awards in two annual

26  installments.) Section 6.2 of the WealthBuilder Plan states:

27            A Participant's Account…is subject to forfeiture in the event the
           Administrator, in his or her sole discretion, determines that the

28                                           -9-

1  Participant has been in Competition with the Company at any time
   during the period ending two years after the Participant's Qualifying
2  Termination.  See Exhibit C, Art. VI, § 6.2(a).

3           d.     FACAAP Plan:    FAs who are retirees are paid 100% of their

4  pre-1995 Awards immediately upon retirement, and in two 50% installments each January

5  following their retirement for 1995 and post awards.  Payment of awards for individuals who

6  qualify under the Rule of 65 for awards earned prior to January 2003 are paid over a ten year

7  period beginning in the tenth year after the award; and for awards earned after 2002, beginning in

8  the eighth year following the earning of the award,  *see* Exhibit A, § 8(a), p. 6.; FAs who are 55

9  years of age or older and complete 20 years or more of service (and others who are older pursuant

10 to a sliding scale) have a one-time option to accelerate payment of 50% of the compensation

11 earned  if  the  FA  signs  a  contract  not  to  compete  with  Merrill  following  termination  of

12 employment.   Under the FACAAP, "Retirement" occurs when an FA ends his or her employment

13 with Merrill Lynch (i) on or after his or her 65th birthday, or (ii) on or after his or her 55th birthday

14 with at least 10 years of service.  *See* Exhibit A, p. 3.  If an FA qualifies for "Retirement," the 10

15 and 8-year waiting periods no longer apply.  Instead, all of the FA's unpaid awards become payable

16 in two equal installments.  The first installment is due at the end of the calendar year of the FA's

17 Retirement, and the second installment is due and the end of the next calendar year.  *See* Exhibit

18 A, § 9(b)(ii), p. 7.  Section 9(b)(iii) of the FACAAP states:

19           …if within two years of your Retirement, or at any time after such
             two-year period if amounts are still payable to you … you
20           commence employment or become affiliated in any way with a
             company determined to be a … competitor of the Company or an
21           Affiliate, any amount paid to you under this section shall be forfeited
             by you and returned to the Company and all amounts that have not
22           yet vested under this section shall cease to vest and no longer be
             payable. *See* Exhibit A, p. 8
23
             e.     Growth Award Plan:   Compensation does not become "vested" until
24
   four years after an award has been granted and is not made until two years after retirement at age
25
   65 or at age 55 with 10 years of service or early retirement under the Rule of 65 (with at least 20
26
   years of service).  *See* Exhibit B, § 6.1, p. 4.  Under the Growth Award Plan, "retirement" occurs
27
   when an FA ends his or her employment with Merrill Lynch (i) on or after his or her 65th birthday,
28
                                            -10-

or (ii) on or after his or her 55th birthday with at least 10 years of service.  *See* Exhibit B, p. 3.  If an FA qualifies for "retirement," the 4-year waiting period no longer applies.  Instead, all of the FA's unpaid awards become payable in two equal installments.  The first installment is due at the end of the calendar year of the FA's retirement, and the second installment is due and the end of the next calendar year.  *See* Exhibit B, §§ 6.1, 7.3.  Section 7.4 of the Growth Award Plan states:

> ...if, within two years of a Participant's Retirement, or at any time after such two-year period if amounts are still payable ... the Participant commences employment or become [sic] affiliated in any way with a company determined ... to be a competitor of the Company or an Affiliate, any amount paid ... shall be forfeited by you and returned to the Company and all amounts that have not yet vested ... shall cease to vest and no longer be payable.  *See* Exhibit B, p. 6

        f.       After plaintiffs left Merrill Lynch to work for competitors, Merrill Lynch in accordance with its practice and announcements relied on the above-quoted provisions of the FACAAP, Growth Award and WealthBuilder Plans to deny plaintiffs their unpaid Account Balances in the Plans, despite the fact that Merrill Lynch knew that these provisions are void, illegal, and severable under Cal. Bus. & Prof. Code section 16600 and Cal. Civ. Code section 1599.

        27.     Merrill receives, on a current basis, that part of the production commissions not paid to the Financial Adviser; and also derives additional income from the assets of clients to whom California FAs provided advice and service.  On a current basis, Merrill took 55% or more of the commissions earned by plaintiffs, paid plaintiffs 40% or less of said commissions as current wages, and deferred payment of other wages earned by Plaintiff in the Plans.

        28.     The forfeiture provisions referred to in paragraph 26 were and are void and unlawful under California Business & Professions Code § 16600, first enacted in the California Civil Code of 1872.

        29.     Merrill's WealthBuilder, Growth and FACAAP Plans are, and always have been unilaterally imposed on its California Financial Advisers and are adhesive contracts unconscionable under California law.

-11-

30.     Plaintiffs' rights under Bus. Prof. Code § 16600 are unwaivable statutory rights, which express the fundamental public policy of the State and which cannot be evaded by a "choice of law" clause in any contract, or other provisions unilaterally imposed in an adhesive contract.  The California Supreme Court has consistently held for nearly 100 years that forfeitures for joining a competitor are void and unlawful.

31.     Defendant Merrill:

a.     had actual knowledge of Bus. & Prof. Code § 16600 at all material times;

b.     had judgments awarded against it for violating Bus. & Prof. Code § 16600 in *Frame v. Merrill Lynch, Pierce, Fenner & Smith* (1971) 20 Cal.3d 668, and *Ware v. Merrill Lynch. Pierce, Fenner & Smith* (1972) 24 Cal.App.3d 35, affirmed *sub nom, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware* (1973) 414 U.S. 117;

c.     knew that the *Frame* and *Ware* cases had rejected attempts to evade § 16600 by including a choice of law clause naming New York or any other state law as the law to be applied;

d.     had been informed by its "in-house" and retained counsel that it had long been settled that forfeiture for competing with an employer after leaving that employer were unlawful in California; and

e.     in 2004 entered into a Protocol Agreement with major brokerage firms.  The principal goal of the Protocol was to "further the clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ("RRs") between firms" and it provided that the "departing RR" would have no monetary liability to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm.

32.     Defendants' violations of Bus. & Prof. Code § 16600 were premeditated, willful and deliberate.

-12-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

## THE ADVISORIES AND OTHER COMMUNICATIONS

33.　Defendants periodically distributed to California Financial Advisers Merrill's "Incentive Compensation Program" which identified payment plans to provide incentives to increase Merrill's current income and pay the Financial Advisers' share of that income in the form of deferred compensation wages, a record of which would be kept in an open book account balance under the Plans;

34.　Those incentives were accompanied by restraints, deterrents, interferences, threats, intimidations and economic coercion, to the effect that no matter how hard they worked, or how much Merrill benefitted from their work, all of the money and property in their Account Balances would be forfeited to Merrill, if they exercised their freedom to exercise their profession and business by leaving Merrill and pursuing their economic advantage going to work for a competitor of Merrill or its affiliate anywhere in the world.

35.　Merrill's threats, intimidations and coercion were intended to and did interfere with the prospective economic advantages of its California Financial Advisers by restraining and deterring them from the free exercise of their lawful profession and business in deciding whether or when to leave Merrill to take employment with a competitor of Merrill anywhere in the world. If and when a California Financial Adviser did leave Merrill and compete with Merrill or became employed by a competitor of Merrill, the forfeitures were automatically imposed by Merrill, and operated year by year during the entire payout period of the Financial Adviser's Account Balance.

36.　California Civil Code § 52.1(b) provides that "Any individual whose exercise or enjoyment of rights secured by . . . laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his or her name and on his or her behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." Subdivision (a) applies to "a person or persons, whether or not acting under color of law, [who] interferes by threats, intimidation, or coercion, or attempts

-13-

1    to interfere by threats, intimidation or coercion" with the exercise or enjoyment of rights secured

2    by laws of California.

3           37.    The Manager/Directors of Merrill's various offices in California derive

4    substantial portion of their compensation from the production commissions earned by the

5    California Financial Advisers working under their supervision and control, and from other benefits

6    flowing from Merrill's use of the assets of clients served by those California Financial Advisers.

7           38.    At all material times, the California Merrill Manager/Directors knew or

8    should have known that the forfeiture for competition provisions in Merrill's WealthBuilder,

9    Growth and FACAAP Plans, were unlawful under California law.

10          39.    The Merrill California Manager/Directors:

11             a.    participated in the threats, intimidations and coercions that interfered

12   with, restrained and deterred California Financial Advisers' free exercise of their rights to

13   prospective economic advantage through the exercise of their profession or business by leaving

14   Merrill and competing with it;

15             b.    fraudulently concealed from those Financial Advisers their

16   knowledge that the forfeiture for competition provisions of the Pans were void and unlawful;

17             c.    fraudulently obtained an advantage for their own and Merrill's profit

18   by means of their exploitation of their knowledge and the Financial Adviser's ignorance of the

19   unlawful and deceitful character of the threats, intimidations and coercions of forfeiture in the

20   WealthBuilder, Growth and FACAAP Plans, the Advisory Programs and their statements about

21   those Plans to deter and restrain FAs from exercising their right to leave Merrill and compete

22   elsewhere in the financial services industry;

23             d.    threatened, intimidated and coerced those Financial Advisers that if

24   they had a dispute with Merrill Lynch which had not been resolved to their satisfaction, Merrill

25   had and would use its vast legal resources to oppose them, and the FA would end up getting

26   nothing in any legal or other proceedings; and

27

28

-14-

1            e.     have a direct pecuniary interest in the success of their own

2    fraudulent misrepresentations, fraudulent concealment, threats, intimidations and coercions which

3    restrain Financial Advisers from leaving Merrill to join a competitor, and in the proceeds of

4    forfeiture which they help to enforce.

5            40.    In an arbitration proceeding before JAMS entitled *Shaffer v. Merrill Lynch,*

6    *Pierce, Fenner & Smith*, the Arbitrator's Final Award of December 6, 2010 determined several of

7    the basic issues in this case against Merrill and will be *res judicata* and collateral estoppel against

8    Merrill in this proceeding.  That award is a Judgment of this Court dated April 8, 2011 with the

9    same title in case no. C 11-00303-CRB.

10            41.    At all material times, the California Merrill Lynch Manager/Directors knew

11    that:

12            a.     California FAs employed by Merrill who wished to leave Merrill

13    were in high demand by Merrill's competitors;

14            b.     Merrill Lynch forfeited the compensation awards of California FAs

15    who left Merrill to join a competitor;

16            c.     They were intentionally concealing from California FAs the fact that

17    they knew or should have known the forfeitures in the Plans were illegal restraints and were void

18    in California;

19            d.     The purpose of the threats, intimidations, and coercions of

20    forfeitures and the actual forfeitures was to restrain and deter FAs from exercising their statutory

21    protected freedom to exercise their profession and business as they chose and to pursue their

22    prospective economic advantages as they chose by leaving Merrill and competing with it;

23            e.     When a California FA sought to obtain some relief from the

24    forfeitures of deferred compensation awards under any of the Plans, and sought relief in

25    arbitration, as required by the Plan, Merrill Lynch used its vast legal resources to obstruct the

26    proceedings, cause unnecessary expense to the FA, and keep the proceedings secret from other

27    FAs; and

28             -15-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

f.    Merrill and they were benefitting financially by Merrill's confiscation of the Account Balances of California FA's whose account balances were being forfeited together with all appreciations in value in their Account Balances.

42.    In arbitration proceedings brought by Merrill FAs seeking to recover their Account Balances under Merrill's FACAAP and/or other Plans after Merrill had forfeited them because the Financial Adviser competed with Merrill or otherwise joined a competitor, on information and belief Merrill has:

a.    Denied liability;

b.    Contested liability until it seemed certain Merrill would lose because § 16600 prohibited the forfeiture; and

c.    Settled the case with a covenant by the FA to keep the settlement confidential.

43.    As an integral part of Merrill's forfeiture schemes, the FACAAP Plan contains arbitration provisions which are solely for the benefit of and advantage to Merrill Lynch and which purport to require FAs:

a.    To bring any claim regarding their rights before an arbitral body, either JAMS or the American Arbitration Association ("AAA");

b.    To be bound by the Rules of JAMS or AAA;

c.    To waive the right to class arbitration;

d.    To require the arbitrator to be a licensed attorney who is experienced with the Plans or similar matters;

e.    Not to consolidate proceedings with those by other FA's without Merrill's consent;

f.    To apply only New York law; and

g.    To submit to a Merrill Lynch appointed Committee of its own directors making final, binding and conclusive decisions about the interpretation and construction of the Plan, and the amount or receipt of amounts by an FA;

-16-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

44.   Said purported requirements:

a.   Deprived and continue to deprive California FAs of a prompt, efficient and permanent vindication of their statutory rights to be free of unlawful forfeitures and threats, intimidations and coercions of forfeiture of their wages if they leave Merrill Lynch;

b.   Were and are a systematic effort to impose and use non-class arbitration and prevent class actions in order to confine FA's to a forum that works only to the advantage of Merrill Lynch by threatening them as individuals with facing and seeking to overcome the vast legal and financial resources of Merrill if they should challenge the forfeitures;

c.   Require individual confidential arbitration by any California FA who sues Merrill Lynch about the forfeiture provisions' legality;

d.   Burden such arbitration with attempts to prevent discovery from the persons within Merrill who are responsible for the scope, maintenance and enforcement of a program of illegal forfeitures of wages of California FAs that Merrill has known for many years is illegal under California law, and frivolous arguments contesting that well established illegality, which cause unnecessary time, expense and costs to the FA;

e.   Result in settlements to the disadvantage of the FA whenever it appears that an arbitrator has perceived the invalidity of Merrill Lynch's arguments, and include in the settlement confidentiality provisions;

f.   Continue to threaten, intimidate, and coerce California FAs with the forfeiture provisions after such settlements; and

g.   Were part of a fundamental fraudulent scheme imposed by adhesive contracts to restrain California Financial Advisers for periods ranging from 10 to 30 years from leaving Merrill to work for themselves or a competitor, by falsely inducing them to believe that the forfeiture provisions were lawful and enforceable by Merrill in arbitration proceedings, all the while knowing that they were:

i.   Void, unlawful, and unenforceable in California, and, therefore, not part of the Plan;

-17-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

1          ii.     Payable automatically, with no lawful reason to require

2    arbitration as to eligibility and payment of what had been forfeited; and

3          iii.    A device to decrease the wages they had earned at Merrill in

4    order to restrain them from competing with Merrill.

5          45.    Defendants' conduct in their threats, intimidation, coercion and enforcement

6    of the forfeiture and arbitration provisions of its FACAAP Plan:

7          a.     Is unconscionable and oppressive under California Civil Code

8    § 1670.5;

9          b.     Is exculpatory in violation of California Civil Code § 1668 in having

10   as its object, directly or indirectly the exemption of Merrill Lynch from responsibility for its own

11   fraud, willful injury to the property of its California FAs, and willful violation of California

12   Business & Professions Code § 16600;

13         c.     Cannot be used to prevent the prosecution in this Court of this class

14   action; and

15         d.     Were intended to prevent a situation in which FA's in other states,

16   upon learning that such forfeitures were void and illegal in California, would demand that such

17   forfeitures cease to be enforced against them, either because such forfeitures might be unlawful

18   under their state laws, or because they should be treated in the same way as their California

19   counterparts, or for both such reasons.

20         46.    All otherwise applicable statutes of limitation did not commence to run until

21   California FAs became aware that Defendants' forfeitures of their Plan awards were void and

22   unlawful.

23         47.    Any otherwise applicable statute of limitations did not commence to run

24   until four years after the date of the last item of the Account Balance which Merrill Lynch should

25   have delivered to each FA who earned compensation award under the FACAAP Plan in 1996.

-18-

## FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
## AGAINST ALL DEFENDANTS

48.    Plaintiffs incorporate the preceding paragraphs as if set forth in full.

49.    All clauses in the Plans forfeiting the Account Balances and other rights of California Financial Advisers if they should compete with Merrill or a Merrill affiliate or in the financial services industry have been and are unlawful and void under California Business & Prof. Code § 16600.

50.    All forfeitures made by Merrill of account balances of California FAs in the Plans because the Financial Adviser competed with or announced that he or she might compete with a competitor of Merrill or a Merrill affiliate or work in the financial services industry were and are void and unlawful.

51.    The following were and are unlawful:  All statements in the Plans, its Annual Advisories to California FAs, and all other communications by defendants and other Manager/Directors in California that Merrill Lynch would forfeit the Account Balances of California FAs in said Plans if they joined a competitor; all their concealment from its California FAs that such forfeitures were forbidden and unlawful under California law; the execution of such forfeitures knowing that they were unlawful; their duplicitous and deceitful use of adhesive arbitration clauses in its FACAAP Plan, and in arbitration to keep California FAs ignorant of the unlawfulness of its forfeitures constituted threats, inducements and economic coercion under Civil Code § 52.1 which attempted to and did interfere with the fundamental statutory rights of California FAs to exercise their profession or business as they chose.

52.    Merrill, and each of its Manager/Directors in California should be permanently enjoined from interfering or attempting to interfere with the exercise by California FAs employed by Merrill of their right to seek prospective business advantages or employment by persons other than Merrill or to quit Merrill and compete with, or become employed by a firm that competes with Merrill or a Merrill affiliate by forfeiting or in any way participating in the proceeds of forfeiting the Account Balances of the FAs.

-19-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

53.     Merrill and each of its Manager/Directors shall annually advise each California FA in writing that California law forbids any restraint by forfeiture or otherwise of an employee's right to quit Merrill and join a competitor or work in the financial services industry.

**SECOND CLAIM FOR RELIEF FOR INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS AGAINST ALL DEFENDANTS**

54.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

55.     The WealthBuilder, Growth and FACAAP Plans were designed, executed and administered by defendants and the Manager/Directors for the purpose of interfering with restraining and deterring plaintiffs' substantially certain prospective economic advantage in taking employment with one of the many firms competing with Merrill that were constantly on the look out to hire them, and to impose substantial and continuing forfeitures of their earned wages over many years in the future if they did compete with Merrill.

56.     Defendants' conduct was wrongful under Bus. & Prof. Code § 16600, "wrongful act for the purposes of Plaintiffs' claim for interference with prospective economic advantage," fraudulent within the meaning of Civil Code §§ 1709 and 1710, illegal as threats, intimidation and economic coercion interfering with statutory rights within the meaning of Civil Code § 52.1, and as a conversion under Civil Code § 3336.

57.     Defendants' conduct was intended to and did disrupt the new relationships their former FAs attempted to achieve and did achieve with their new employers, and caused those FAs' economic harm.   Defendants' conduct was intended to and did cause said FAs severe emotional harm.

**THIRD CLAIM FOR RELIEF ON A BOOK ACCOUNT AGAINST DEFENDANT MERRILL**

58.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

59.     The relationship between Merrill and its California FAs under the WealthBuilder, Growth and FACAAP Plans was that of a debtor (Merrill) and creditor (California FAs).

-20-

60.   The Account Balances were a book account within the meaning of California Civil Procedure § 337 subdiv. 2, which provides that the statute of limitations does not commence to run until the last payment on said account is due.

61.   The last payment of the class members Account Balances would be due when the last payment under all of the Plan awards included in their Account Balances was due. Under the FACAAP Plan, that payment would be 2015, for award years commencing in 1995, and would be 2018 for years commencing in 2002.   Where an Account Balance included WealthBuilder awards, the last payment would be due when FA reached the age of 55.

62.   Merrill is liable to pay over to California FAs whose Account Balances under the WealthBuilder, Growth, or FACAAP Plans for joining a competitor were forfeited for their having joined a competitor, the full value of all such Account Balance plus interest at the statutory rate of 10% from the time each payment was due.

63.   Said Account Balances include all of those forfeited from the commencement of the earliest of the WealthBuilder, Growth and FACAAP Plans to the present day.

## FOURTH CLAIM FOR RELIEF FOR CONSTRUCTIVE TRUST AGAINST DEFENDANT MERRILL

64.   Plaintiffs incorporate the preceding paragraphs as if set forth in full.

65.   By its forfeitures, Merrill wrongfully detained the property of California FAs in violation of Bus. & Prof. Code § 16600, Civil Code § 52.1 and by fraud and wrongful acts, and by reason thereof and California Civil Code § 2223-2224, Merrill is a constructive trustee for their benefit of the Account Balances under WealthBuilder, Growth and FACAAP Plans of all property formerly held in their names.

66.   Merrill held the property in shares of stock and mutual funds, cash and indebtedness award balances in the WealthBuilder, Growth and FACAAP Plans, together with interest and profits on them, in constructive trust for its California FAs, whose account balances it illegally forfeited.

-21-

67.     Plaintiff and members of the Class were ignorant of the fact that Merrill had misrepresented to them that the adhesive contractual WealthBuilder, Growth and FACAAP Plans under which it obtained their labor gave it the right to forfeit the long term compensation wages they earned, if they should leave Merrill and compete with, or join with a competitor who competed with Merrill or an Affiliate of Merrill; had concealed from them the fact that any such forfeiture was void, unlawful and ineffectual, and taken steps to prevent disclosures of such information; and all the while Merrill knew that under California law, the Plans had to be read as though such forfeitures and restrictive provisions did not exist.

68.     By reason of the facts referred to paragraphs 1 through 47, the claim for relief for constructive trust did not arise until 2010.

**FIFTH CLAIM FOR RELIEF FOR FRAUD AGAINST DEFENDANT MERRILL**

69.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

70.     Defendants misrepresented to Plaintiffs that the WealthBuilder, Growth and FACAAP Plans contained forfeiture clauses permitting Merrill to forfeit to itself the Account Balances of California FAs if they joined a competitor, though it knew that under California law (Bus. & Prof. Code § 16600 and Civil Code §§ 1441, 1451 and 1667) such clauses were void and unlawful and had to be read out of those Plans.

71.     Knowing that the forfeiture clauses of the WealthBuilder, Growth and FACAAP Plans were void, unlawful, and not a part of those adhesive contracts, Merrill obtained the services of its California FAs by representing to them that it would pay them their Account Balances once they qualified under the terms of those Plans, fraudulently concealed from them that those forfeiture conditions were unlawful, and fraudulently forfeited their Account Balance, which Merrill must restore to them at their value at the time of forfeiture plus interest under Civil Code § 3287.

**SIXTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT
AGAINST DEFENDANT MERRILL**

72.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

-22-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

73.     Defendant Merrill is liable to plaintiffs for breach of contract for the amounts due in each year to them on their account balances, together with interest at the rate of 10% per year on each such award from the date that it first became payable until actual payment of each such amount.

74.     Section 9(b)(iii) of the FACAAP, § 7.4 of the Growth Award, and § 6.2(a) of WealthBuilder Plans which purport to result in a forfeiture of awards in the event the participant works for a competitor of Merrill Lynch, are void and illegal under Cal. Bus. & Prof. Code § 16600. Accordingly, those provisions should be severed under Cal. Civ. Code § 1599.

75.     For those plaintiffs and class members who left Merrill Lynch for good reason after September 2008 when a merger with Bank of America was confirmed, Merrill Lynch further breached the Plans by failing to pay awards under the Plans following a change of control.

76.     As a result of Merrill Lynch's breaches of contract, Plaintiff and the members of the class have been damaged in amounts to be proved at trial.

**SEVENTH CLAIM FOR RELIEF FOR CONVERSION**
**AGAINST DEFENDANT MERRILL**

77.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

78.     Defendant Merrill converted the Account Balances of Plaintiffs at the time it forfeited them and is liable to them under Civil Code § 3336 in the amount of the value of the Account Balance at the time of conversions, with interest from that time and a fair compensation for the time and money properly expended to recover of those Account Balances.

**EIGHTH CLAIM FOR RELIEF FOR VIOLATION OF**
**BUS. & PROF CODE § 17200 *et. seq.* AGAINST DEFENDANT MERRILL**

79.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

80.     Merrill Lynch's refusal to pay plaintiffs and members of the class their Plan awards solely because they worked for a competitor of Merrill Lynch violated Cal. Bus. & Prof. Code section 16600 and was, in turn, an unlawful, unfair or fraudulent business act or practice in violation of Cal. Bus. & Prof. Code section 17200 *et. seq.*

-23-

81.     Section 9(b) of the FACAAP, § 7.4 of the Growth Award, and § 6.2 of the WealthBuilder Plans are contractual provisions that restrain plaintiffs and the other members of the class from engaging in a lawful profession, trade or business, in violation of Cal. Bus. & Prof. Code section 16600.  Merrill Lynch's inclusion of these provisions in the Plans, as well as its enforcement of those provisions, are unlawful, unfair or fraudulent business acts or practices, in violation of Cal. Bus. & Prof. Code section 17200 *et. seq.*

82.     Plaintiffs are persons who suffered injury in fact and lost money and property as a result of Merrill Lynch's acts of unfair competition.

83.     Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiffs seek an order: (i) striking § 9(b) of the FACAAP, § 7.4 of the Growth Award, and § 6.2 of the WealthBuilder Plans, and enjoining Defendants from attempting to enforce those provisions with respect to the members of the class; and (ii) restoring to plaintiffs and members of the class the value of their lost Plan awards.

## NINTH CLAIM FOR RELIEF FOR RECOVERY OF UNPAID WAGES AGAINST DEFENDANT MERRILL

84.     Plaintiffs incorporate the preceding paragraphs as if set forth in full.

85.     Awards to plaintiffs and all class members are unpaid wages under Cal. Labor Code § 200.

86.     By refusing to pay plaintiffs and all class members their unpaid Account Balances in the Plans, Merrill Lynch violated California statutes regulating the payment of wages, including Labor Code §§ 201, 202, 204, 221, and 222.

87.     As a result of Merrill Lynch's conduct, plaintiffs and all class members have been damaged in an amount to be proven at trial.

88.     Merrill Lynch's conduct in forfeiting the Account Balances was and is willful, entitling plaintiffs and all class members to waiting time penalties pursuant to Labor Code § 203.

-24-

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

89.     In addition, Merrill Lynch is responsible for plaintiffs' and class counsels' reasonable attorney's fees and costs pursuant to Labor Code § 218.5.

**PRAYER**

Plaintiffs request the following:

1.     Certification of the case as a Class Action on behalf of the pleaded class.

2.     Designation of representative plaintiffs Martin, Norris, Stone and Kerr as Class Representatives.

3.     Designation of plaintiffs' counsel in the *Martin* and the *Kerr* actions as Class Counsel.

4.     On the First Claim for Declaratory Relief Against All Defendants, an injunction and declaration as set forth in the First Claim for Relief;

5.     On the Second Claim for Relief for Interference with Advantageous Business Relations Against All Defendants for compensatory, economic and emotional distress damages in the sum of $100,000 per plaintiff or Class member, and for punitive damages against all defendants;

6.     On the Third Claim for Relief on a Book Account Against Defendant Merrill, for the full value of the Account Balances under the Plans for each California Financial Adviser from the commencement of the earliest of said Plans forward, whose account was forfeited because the Financial Adviser became otherwise employed in the financial services industry or with a competitor of Merrill, together with interest at the rate of 10% per annum from the time of said forfeiture;

7.     On the Fourth Claim for Relief for Constructive Trust Against Defendant Merrill,  for having wrongfully detained the property of California Financial Advisers in violation of Business and Professions Code § 16600, Civil Code § 52.1 and by fraud and wrongful acts as a trustee under Civil Code §§ 2223-2224 with respect to their property in stocks, mutual funds, cash and indebtedness awards under the WealthBuilder, FACAAP and Growth Plans, together with 10 % interest, and for attorneys' fees pursuant to Civil Code § 52.1;

-25-

2306.000/507457.1

CONSOLIDATED FIRST AMENDED COMPLAINT
Case Nos. 10-CV-04020 CW; 11-CV-01654 CW

8. On the Fifth Claim for Relief for Fraud Against Defendant Merrill, for restitution plus interest under Civil Code § 3287;

9. On the Sixth Claim for Relief for Breach of Contract Against Defendant Merrill, for damages plus 10 % interest;

10. On the Seventh Claim for Relief for Conversion Against Defendant Merrill, for the value of the Account Balances, plus 10% interest, and the time and money spent to recover those Account Balances;

11. On the Eighth Claim for Relief for Violation of Bus. & Prof. Code § 17200 et. seq. against Defendant Merrill, restitution of the value of forfeited Account Balances, plus interest at the rate of 10% per annum, and injunctive relief;

12. On the Ninth Claim for Relief for Unpaid Wages against Defendant Merrill, the value of the forfeited Account Balances, plus interest at the rate of 10% per annum, plus waiting time penalties, and attorney's fees and costs;

13. An accounting;

14. Punitive damages on the claims for relief permitting such damages;

15. For penalties under California Labor Code sections 2698 et seq., the Labor Code Private Attorneys General Act of 2004 ("PAGA"); and

16. Reasonable attorney's fees and costs.

DATED: 7/28, 2011                    BARTKO, ZANKEL, TARRANT & MILLER
                                     A Professional Corporation


                                     By _____
                                                Robert H. Bunzel
                                             Attorneys for Plaintiffs
                                        KEVIN MARTIN, DAVID NORRIS
                                              and FRANK STONE


DATED: 7/28, 2011                    DOSTART CLAPP & COVENEY, LLP


                                     By _____
                                                James F. Clapp
                                        Attorneys for Plaintiff JOHN KERR

-26-